Oral argument not to exceed 15 minutes per side. Mr. Cook will look for the appellant. We'll give Mr. Eman a moment to clear on out of here. Take your time. Don't worry, you have a lot of papers there. Morning. Good morning. May it please the court, I'm Matthew Klikulik. I represent the interested party appellant Jeffrey Feiger, actually the lien holder of the Feiger firm in this matter. And this is an appeal from the district court's ruling on plaintiff's motion for determination of lien in which we assert numerous errors by the district court that we hope this court will correct. To jump right into our arguments because I'm sure the court's well familiar with our briefing and the rather involved procedural history. The district court erred in failing to conduct an evidentiary hearing in this matter. It put the cart before the horse in failing to first determine whether it had jurisdiction and the extent that it was going to exercise supplemental jurisdiction over this lien issue and the legal framework for its decision before then conducting an evidentiary hearing and determining the necessary facts for its quantum merit determination. The Feiger firm contested the reasonableness of the statements as to the amount of time spent by its former employees on the case. Tom Liza, Paul Brochet, Michael Desi, and Ben Johnson contended it was entitled to credit in its quantum merit for the pre-referral time that Dennis Detmer, the referring attorney, spent on the case and claimed that an evaluation of the time that successor counsel spent on the case was necessary to determine its quantum merit award on a percentage basis. In this circumstance, the Peterman v. Haverhill Farms, Inc. case from the Michigan Court of Appeals in 1983 decision, which we cite in our brief, requires that an evidentiary hearing be held. Also, in our reply, we cited an unpublished Court of Appeals decision from Michigan, Barth v. Feiger, in which the Court of Appeals remanded for an evidentiary hearing to support the trial court's quantum merit award of 90 percent of a net attorney fee to the Feiger firm and only 10 percent of an award to, interestingly enough, Paul Brochet again, who is successor counsel. That's what the court should have done here, yet it conducted no evidentiary hearing whatsoever. What would adhere to evidentiary hearing? We would present evidence as to the amount of time and work that was spent on the case, the amount of time and work that was spent on the case by Dennis Detmer prior to the referral, which we believe that the Feiger firm with the referral agreement is entitled to credit for and payment for in quantum merit. The Feiger firms work on the case during its two and a half years of representation, and then also that would be balanced with the work that successor counsel did on the case to make a percentage basis determination of the split of the net contingent fee in the matter. Your opponent seems to suggest that your side had plenty of opportunity to put in affidavits or statements about that, and you didn't do it. Is that correct, or is he just wrong? We didn't do it because we had not yet determined whether there was going to be an evaluation, well, whether the court was actually going to exercise jurisdiction or defer and let the matter that we filed in the state courts go forward, the extent to which it was going to exercise its supplemental jurisdiction. And we asked repeatedly at the hearing on the matter that an evidentiary hearing be held, and there was never any hint that the court was going to simply make a decision based on the self-serving affidavits filed by former counsel of the Feiger firm that took the case with them when they left the firm's employment and said, oh, we only did this much work. So the other side did put in affidavits or proof, but your side did not. No, we did not because there was no evidentiary. You just sat around until the court ruled, and now you want a hearing. I certainly don't think that we sat around, Your Honor. We raised numerous legal issues. Well, you didn't put it in the record, and what's the court supposed to do, give you hints? I mean, you've got a lot of lawyers in your firm, and you know what the law is. The court is supposed to, and this has been the case in numerous quantum era lien determination matters that we've had in both state and federal court, hold an evidentiary hearing as is consistent with the Peterman decision that I cite to Your Honors. So you argue that the standard review before us is de novo? I do, Your Honor, because— fees that would be entitled, as I understand it, to the FIBA firm based upon quantum merit. That seems to be sort of the type of matter that we typically hear on abuse of discretion. I claim that this is reviewed on a de novo basis because a claim of quantum merit arises in equity, and equitable decisions are reviewed de novo by the court. And the determination as to whether the court would apply quantum merit on an hours multiplied by an hourly rate basis, which is sort of the more traditional method, or on a percentage basis, which we believe is far more appropriate here and for which there's ample supporting authority for doing so, and which the FIBA firm wants done, that would be something that this court and the district court could review de novo. Well, trial courts regularly determine fee awards based upon a number of factors. Quantum merit is one. Johnson factors, any number of things. And my understanding is that we review for abuse of discretion most, if not all, of the time. So this would be some sort of an exception because this was an equitable determination as opposed to some other determination, hours times fee or whatever it might be. I believe so, Your Honor, because the district court made certain legal determinations in framing how it was going to evaluate the FIBA firm's claim, the quantum merit claim. First of all, whether it would hold an evidentiary hearing. Secondly, we believe the district court erred in failing to even mention or consider whether its quantum merit award determination could be made on a percentage basis. We cited Ambrose v. Detroit Edison Company in 1975 decision of the Michigan Court of Appeals, which is a seminal attorney lien quantum merit case. And there it says that under Michigan law, a discharge attorney is entitled to choose whether the quantum merit award of attorney's fees for services rendered is done on a hours multiplied by hourly rate or a percentage basis. And the FIBA firm clearly indicated in its response to the motion that it wanted it done on a percentage basis. There is also the Morris v. That was citing a New York case and the New York case, I mean, it just cited and said that's a good way to do it. It didn't say that's the absolute way, right? That is true, Your Honor, yes. It cited the Powell-Lillow case, I believe it is, saying that this provides a good basis for how this should be done. And the Powell-Lillow case in turn said that the attorney with the lien has the choice, makes the choice whether it's done on an hours by hourly rate or percentage basis. You're saying that we ought to follow New York precedent? Well, Michigan precedent in turn referring to New York precedent as the appropriate way to do it, yes. There is likewise numerous other cases from Michigan courts, the Morris v. City of Detroit and the Reynolds v. Pullen cases, which I cited in my briefing, which apply a percentage basis quantum narrow determination. And I also cited a May 2013 unpublished decision from the Eastern District of Michigan, Judge Zakoff specifically, Bailey v. Nylencraft, and all those cases acknowledge that a determination on a percentage basis is appropriate in a case such as this where both sides have to reconstruct their hours because this case has been done on a contingent fee basis all along. And so, you know, contingent fee attorneys typically don't keep meticulous track of their records because at the end of the day, hopefully they're going to get a contingent fee. Could you explain, maybe clarify for me what you're asking this court to do vis-à-vis, I guess what's called the poison pill agreement, the sort of liquidated damages and other penalties that might be incurred by a member of the firm or employee of the firm who leaves and a client happens to end up with that person. And you're asking that we clarify that the district court did not rule on the enforceability of the agreement? Is that the request? That's correct, Your Honor. The district court indicated that it was only going to decide the FIGRE firm's quantum merit claim. And we, in trying to persuade the court to decline supplemental jurisdiction and allow these issues to be decided by the state court, raised the issue of the fact that we had a claim against Paul Brochet under this employment agreement with the FIGRE firm and then also potentially a claim or related tort claims, a claim for breach of the referral agreement by Dennis Detmer. And we said that those are state law issues that the state courts are equally able to handle resolving that issue, such that the court need not exercise its supplemental jurisdiction to do so. And, in fact, the court did say it was only going to decide the quantum merit basis and made some dicta statements about how it may not be an enforceable contract under certain ethical opinions, et cetera. But it did not purport to conclusively decide whether it was enforceable or not. It did not litigate that issue. And yet, unfortunately, the Wayne County Circuit Court looked to those dicta statements in the district court's opinion and applied them as re judicata and has granted summary disposition of those claims in the Wayne County Circuit Court. And we are now presently appealing that re judicata determination to the Michigan Court of Appeals. I mean, it does seem that relief is in the state court system. I'm not clear to me what this court can or should do. I'm just asking the court to direct the district court to clarify that it was not deciding that issue so that we can then litigate the matter in state court. Brochet was not a party to this case at all, was he? Well, Your Honor, interestingly, it's a rather interesting how this unfolds. Did he process and come in as a party or anything? No, he was not, actually. He came in as an attorney for the plaintiff after Dennis Detmer substituted in for the FIGER firm. And it was revealed in their reply to the motion for determination of lien that Mr. Maldowan did not, in fact, resign with Dennis Detmer a contingent fee agreement upon discharging the FIGER firm even though Mr. Detmer substituted in for the FIGER firm. He, in fact, resigned a contingent fee agreement with Paul Brochet, which then came to light in their reply brief, which then caused us to raise this employment agreement issue. So that's why I think it's a rather confusing procedurally because new facts kept coming up and it was hard to pin down what was really going on here and what their argument was. I believe the district court erred in ruling that the FIGER firm could not obtain recovery of Dennis Detmer's pre-referral time and effort in Quantum Meroweth, which plaintiffs indicated amounted to five and a half years and thousands of hours of work. And it found this because the FIGER firm purportedly did not meet implied conditions precedent of finishing the case and obtaining a recovery. And I think that that was error. If the FIGER firm met those conditions and obtained a recovery, it wouldn't need to seek Quantum Meroweth. It's kind of an internally inconsistent argument. Furthermore, there was a meeting of the minds and substantial performance by both Detmer and the FIGER firm on the referral agreement. Detmer transferred his original file to the FIGER firm for his exclusive use in Muldowan's representation going forward,  indicated that once Mr. Muldowan signed a contingent fee agreement with the FIGER firm, that his contingent fee agreement with Mr. Detmer would be null and void. And the FIGER firm represented Muldowan's interest in the litigation for two and a half years until it was discharged and Detmer substituted back in and agreed to pay Detmer one-third of any net recovery in this case. They claim they did a whole lot more work than your firm did. Pardon me? They claim they did a whole lot more work on this case than your firm did because, if nothing else, by the passage of time and the number of motions and that sort of thing. Our argument, Your Honor, is that in agreeing to the referral arrangement, Dennis Detmer gave up his right to that five and a half years and thousands of hours of work and gave it to the FIGER firm for its use going forward in order to hopefully obtain a recovery. And in exchange, he would then get one-third of any recovery as a referral fee. And so now that there's been a discharge and the FIGER firm is entitled to that in its quantum merit analysis, Dennis Detmer can then look to the FIGER firm for that recovery in quantum merit for one-third of it. Well, the district court held it was conditional upon your firm getting through the whole case and it didn't get through the case, right? We were unable to get through the entire case because the referring attorney, Dennis Detmer, conspired with attorneys within the FIGER firm to take the case and to persuade the client to discharge the FIGER firm and then settle the case out from underneath it. So, again, the argument that the FIGER firm would have to finish the case and obtain a recovery, we were prevented to do that by the misconduct of the referring attorney. You want the district court to find that this lawyer was out there conspiring with members of your firm and stole the case back? Is that what your position is? Well, those are certainly issues that are raised more directly in our breach of referral agreement, breach of employment agreement, and related tort claims in the state courts. All we're saying is that in quantum merit, because of the referral agreement, we would be entitled to credit for the pre-referral time of the referring attorney. He transferred that case to us, gave it to the FIGER firm, said, you go forward with it, and in exchange for that, I get one-third of whatever you recover. You want to get paid for his work because he turned it over to you, right? Correct. And the consideration for that was one-third of any recovery by the FIGER firm. Okay. Your initial time has expired. I think you've got three minutes of rebuttal. Thank you. Good morning, Your Honor. May it please the Court, Michael Desi. Good morning. Thank you for having us down here this morning. Your Honors, probably the most important fact that has not been brought out or discussed this morning is the FIGER firm stipulated when they entered a substitution of counsel that its right to recover in the case would be based on quantum merit. They stipulated to it. In fact, I think there were three stipulations entered by the FIGER firm that their recovery in the case would be quantum merit. Okay. The FIGER firm later decided it didn't like its chances of recovery in the case if it was going to be based on quantum merit because its time was so limited in the file. So that's not been discussed yet this morning. I think it's the most important fact in the whole case. They stipulated that they would be recovered on quantum merit. Their agreement with the client, Mr. Muldowan, also said if Mr. Muldowan was to discharge the FIGER firm, that the FIGER firm would be entitled to recover based on the reasonable value of its services under quantum merit. They agreed to that with their client, Mr. Muldowan, and they agreed to it by filing their stipulations with the district court. Well, they said it's quantum merit, and then they said they don't want to do it. Time spent times what their value is, but they want to do it on a percentage even under that criteria. What about that? Right. I understand that that's what they want to do, and I understand that they've cited the footnote from the Ambrose case, which cites the Paolillo case from the Southern District of New York. It's a footnote in a case from the Michigan Court of Appeals that says this is one way in which to do it. That is certainly not precedential. It's never been adopted or followed by Michigan as the standard. This is a very straightforward, simple equation of quantum merit. The district court, Judge Lawson, said, look, we're going to apply Michigan law. The Sixth Circuit, this court, has applied Michigan law, Dean versus Holiday Inn, and they said quantum merit is based on the hours versus a reasonable time that has been expended on the file. That's what the district court did in this case. Now, for the FIGER firm to say, well, we were denied an opportunity to present our evidence, and my brother counsel mentioned this morning that he said, and I wrote it down, he said that the FIGER firm contested the hours expended by the attorneys. No, no, they did not. The FIGER firm did not contest the hours that were expended by the attorneys from the FIGER firm on the file. In fact, they filed three or four supplemental briefs with hundreds of pages of exhibits and briefs and motions, and they just kept submitting more and more documents to the court, and never in any single one of those filings did they contest the hours. They never offered an affidavit that said, this is what we believe that the time would be on this file. Never, never once they did, and Judge Lawson pointed this out in his opinion, the March 18th opinion, the second opinion of his, which is at issue here, and he went through and cataloged all of the opportunities, all of the filings that were made by the FIGER firm, and said not once did they offer any competing evidence, and Judge Lawson compared that to the procedures that we use under Rule 56. He was well within his discretion to do that. If there wasn't a factual issue that had been contested based on the record, Judge Lawson was well within his right to do that. Now, as I understand the FIGER firm's argument, at least one argument, is that really under Michigan law they were entitled to, or at least should have had, some sort of an evidentiary hearing at which they could present all of these matters that you just referenced, and they've referenced in terms of hours spent in quantum merit and things of that nature, and they were denied that opportunity, and that we should remand this matter so that they have an opportunity to come into court and set forth all of these factual matters and matters of argument. Why shouldn't, because in essence this was an equitable remedy reached by the court in making a determination as to fees owed to FIGER firm. Well, the district court discussed that in its opinion, the March 18th opinion, and the district court said there has been record evidence submitted by the attorneys that were requesting the lien determination. That was submitted in the very first motion for the determination of the lien interest. But they said the district court was wrong. Well, I respectfully disagree with the FIGER firm that they were wrong. Let's keep this in perspective. First, they stipulated that their recovery would be based on quantum merit, and now what they're essentially asking is that this be considered a contract claim. And in the alternative, they're saying, well, and if it's not a contract claim, then we want the opportunity to do that. They played their cards the way they wanted to play their cards. And once they figured out that that wasn't going to work out or wasn't beneficial to them, they changed their course. And yes, they did sue all of the attorneys in state court, and that case was dismissed. And so once the FIGER firm decided it didn't like the outcome or the likely outcome from the federal court, they said, well, let's go sue all of the attorneys now in state court and we'll litigate these issues of conspiracies, conversions. They've accused the attorneys, including myself, of a host of scandalous criminal activity. And I do want to mention this because there is a procedural motion that's been pending, a motion to strike. It should be pointed out that the lien that was filed in this case was filed by the FIGER firm. The FIGER law firm filed the lien interest. The notice of appeal that was filed in this case was filed by the FIGER law firm. Now, on appeal for the first time, Mr. FIGER, Mr. Jeffrey FIGER, has asserted himself as the interested party. Now, I'll tell you why I believe he did that, because he didn't want to subject himself to an evidentiary hearing at which his credibility was going to be contested based on his massive misconduct that's been well documented all over the country. He didn't want to subject himself to that evidentiary hearing, and that's why they took the position that he wasn't going to assert himself as the interested party until we got on appeal. And then for the first time, Mr. FIGER said, well, I'm the interested party now in this, and now I want to strike all of these scandalous accusations that have been said about me in the briefs. He was never the interested party at the district court. So that's just like a play of cards or something. For whatever reason, he didn't want to subject himself to that at the district court. He decided he wanted to do it on appeal and raised it for the first time. So I'd just like to address that because we do have that procedural motion out there that was referred to the panel for Your Honor's consideration. But you have to look at how this evolved and how they played their opportunities out with the district court and then around the same time ran into state court to sue the attorneys. The state court dismissed the action and res judicata. I do want to address your argument about what you asked my brother, Counsel, about the poison pill agreement. I guess I should call it the employment agreement. I think we've all called it the poison pill agreement. I think Judge Lawson called it the poison pill agreement. The poison pill agreement is unenforceable. It is a violation of the rules of ethics. And Judge Lawson commented on that and noted that because he had to dispose of that since the FIGER firm had raised all of these contract claims, specious contract claims, if I may call them so. And so Judge Lawson said this doesn't pass muster with the Michigan rules of professional conduct. There is an ethical opinion out there, the Michigan rules of ethics, ethics opinion RI-245. It addresses that specific type of agreement down to a T. It is unethical. For whatever reasons that escape me that Mr. FIGER and the FIGER firm would want to assert that particular document as a basis for recovery, it escapes me. But again, I'm not here to litigate their case. But if they're asking the court to use that as the basis, I'm asking this court to find that that agreement is unethical and violates the rules of professional conduct. MRPC 5.6 to be in particular, and that has been expounded on in the ethics opinion RI-245. It goes through this in detail why an opinion of such is unethical. One, it takes away the client's right to retain and discharge attorneys. Now, the FIGER firm's approach to this entire case is, well, we weren't discharged. This was a conspiracy. No. The FIGER firm was discharged. Once the FIGER firm was discharged by the client, it really doesn't matter what attorneys represented the client after that. I am business partners with Mr. Detmer. He had retired. He just celebrated a birthday. I won't say which one. But he had retired for many years. He had helped these gentlemen for 10 years. These gentlemen that went to prison for 12, 13 years for a crime they did not commit. Mr. Detmer had been working on this file since the early 2000s. He had retired for a couple years, as it turns out, briefly, and now he's returned to the practice of law and has resumed his representation of Mr. Muldowen after all of the attorneys left the FIGER firm. The FIGER firm experienced a mass exodus of attorneys within six months. I was one of them that left. I was actually the first one that left. But regardless, that's not important to the decision before this court. Mr. Detmer then began representing Mr. Muldowen after Mr. Muldowen discharged the FIGER firm. But if you look at the comparison of what happened in this case over many, many, many years, Mr. Detmer expended all of the costs, nearly all of the costs. He bore all of the risks of the case. He worked up all of the discovery, dozens and dozens of depositions, read through all of the trial transcripts of the underlying criminal trials, and the district court had that evidence before it. It was all set forth in affidavits by all of the parties, at least the parties that wanted to submit the affidavits and the evidence, about what was done before, what was done during, and what was done after. When this case was at the FIGER firm, it was essentially on appeal. I argued the case here at the Sixth Circuit before Judge Clay, Judges Kethledge, and Judge Karen Nelson-Moore. I remember it very well. It was on appeal. It came into the FIGER firm only weeks before the oral argument. Mr. Detmer had written all of the briefs. He'd handled the entire case extensively all the way up to that point. I remember coming up here on a couple weeks before the oral argument, learning the file. You mean you argued the brief that was written by him? That's right. I did it. I argued the brief that was written by Mr. Detmer, and we prevailed before this court, as I mentioned with the panel. And then after the Sixth Circuit had issued its rulings, the defendants in the underlying case took it up to the U.S. Supreme Court. It just languished around, as we all know what happens with cases on appeal, en banc, petitions for rehearing, petitions for certiorari to the U.S. Supreme Court. It was essentially dormant until after it came back out of the firm, and Mr. Detmer began his representation again of Mr. Maldwan. Anyway, I think that the issues have been all set forth adequately. I feel like I have briefed it all, and before the court, all of it is contained in my brief. If you have any questions, I'm happy to answer them. I think we've covered the major points that were brought up and discussed. You think this is discretionary, or is this a de novo review? I believe it's discretionary. It's a matter of reviewing an award of attorney fees, and the law is clearly established. In fact, my standard of review quotes their standard of review from their brief, which says a review of an award of attorney fees is reviewed for abuse of discretion. I don't believe this case is any different. And would it also be discretionary in terms of the court holding or not holding an evidentiary hearing, in your view? I believe that would be discretionary because Judge Lawson relied on Rule 56, as an example, to say there was no disputed question of fact on it since there had been no competing affidavits submitted. As to the calculation of the quantum error, just on the tail end of that, Judge Lawson did ask the parties to submit evidence as to what the reasonable hourly rate would be. And the FIGER firm said, well, we believe that the hourly rate would be $600 per hour for this attorney, $600 for this attorney, and $475 for this attorney. And we said, fine, we'll accept those amounts, and Judge Lawson adopted that. So as to the hourly rate, that's not even in dispute. Now it's just as to the hours that were expended. But again, this goes back to what Judge Lawson pointed out in his opinion. The FIGER firm never contested that in any of their pleadings, and they filed all of these supplemental pleadings with all of these supplemental exhibits, and never once did they submit something of any evidentiary value that disputed the hours, other than just saying the hours are wrong and the lawyers are lying and they stole our case and this is a conspiracy and this is theft and this is conversion. That's what they said. That was what they wanted to put before the district court, and they had the opportunity, and they lost on that particular determination. And now this is just them complaining that it didn't come out the way they wanted it to come out. Okay.  Thank you, Mr. Desi. What we seek is quantum merowit. That's correct. We don't contest that, but we seek quantum merowit on a percentage basis. We think that Detmer's pre-referral time, in this case because of the referral agreement, transferred to the FIGER firm and is entitled to it, and Detmer is in turn entitled to a one-third of that as his referral fee. The Morris case, Morris v. City of Detroit, Reynolds v. Poland, Bailey v. Nylandcraft, all of which are cited in our brief, all say that it's appropriate to determine quantum merowit on a percentage basis. There's ample legal authority for doing so. We did contest the representation of our former counsel's time as self-serving and unreasonable. We also indicated that we needed to determine what Detmer's pre-referral time was in the case, and we also needed to determine successor counsel's time after the FIGER firm was discharged in order for there to be an appropriate percentage basis determination of quantum merowit. And we didn't have the capacity or the ability to find out what Detmer's pre-referral time would be. You'd have to have an evidentiary hearing with testimony to do so or discovery. You admit that the way that the court determined this by hours times hourly rate is acceptable by the courts, right? It is one method, but the court didn't even consider or mention the fact that we strongly advocated and pointed out binding authority, saying that it's also appropriate, particularly in a case like this where it's been handled on a contention fee basis for eight or nine years and you're trying to reconstruct time, that it's appropriate to do it on a percentage basis. It didn't even mention that as though we never even argued it, and that was a substantial portion of our arguments in our briefs to the trial court. If it's discretionary review, then if the court decides one way against another that that's acceptable, that's its discretion, right? Well, I don't believe so if it doesn't even consider the fact that there's this other option out there, which is apparently what the trial court did because there was never a mention of the percentage basis of quantum merit determination. Also, in our standard review, we cited that while a claim for contract damages is legal in nature, a claim for quantum merit is equitable in nature, and equitable decisions are reviewed de novo, but findings of fact supporting those decisions are reviewed for clear error. Well, there are numerous questions of law that the trial court had to make. The legal framework for its decision, which we think were in error, and those are reviewed de novo. Finally, well, actually not quite finally, Brother Counsel indicated that Jeffrey Feiger asserted himself as an interested party in this case on the appeal of the matter. That's not the case at all. We filed a claim of appeal as the Feiger firm, which was the same party that asserted its lien interest in the trial court, and it was the Sixth Circuit clerk who captioned the case with Jeffrey Feiger as an interested party, and in footnote one of our brief, we indicated as much, that in actuality this appeal is brought by the Feiger firm itself just as the lien and the response to plaintiff's motion for determination of lien were filed by the Feiger firm. So we had nothing to do with that. So, you know, the conspiracy of why Mr. Feiger would have asserted himself individually on the appeal is nothing. Mr. Kleckleck, your time has expired. We certainly appreciate your arguments and yours, Mr. Desi. Thank you very much. The case will be submitted, and you may call the next case.